UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ROBERT GERRY,

       Plaintiff,

                   <u>MEMORANDUM & ORDER</u>
   -against-           17-CV-7371 (JS)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:  Howard D. Olinsky, Esq.
       Olinsky Law Group
       300 South State Street, Suite 420
       Syracuse, NY 13202

For Defendant:  Candace S. Appleton, Esq.
       United States Attorney's Office
       Eastern District Of New York
       271 Cadman Plaza East
       Brooklyn, NY 11201

SEYBERT, District Judge:

    Plaintiff Robert Gerry ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for Social Security Disability Insurance benefits. (Compl., D.E. 1, ¶ 1.) Presently pending before the Court are Plaintiff's motion for judgment on the pleadings, (Pl.'s Mot., D.E. 8), and the Commissioner's cross-motion for judgment on the pleadings, (Comm'r's Mot., D.E. 11). For the following reasons, the

Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

BACKGROUND[1]

On June 9, 2014, Plaintiff completed an application for disability benefits alleging that since October 9, 2013, bilateral knee problems and rheumatoid arthritis have rendered him disabled. (R. 75, 146-54, 161.) Plaintiff's claim was denied on November 19, 2014, (R. 78-85), and on November 25, 2014, he requested a hearing before an Administrative Law Judge ("ALJ"), (R. 86-88). On December 15, 2016, Plaintiff appeared with his attorney for a hearing before ALJ Patrick Kilgannon. (R. 58-74.)

In a decision dated February 15, 2017, the ALJ found that Plaintiff was not disabled. (R. 8-16.) On October 18, 2017, the Social Security Administration's Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. (R. 1-4.)

Plaintiff filed this action on December 19, 2017, (see Compl.), and moved for judgment on the pleadings on May 25, 2018, (Pl.'s Br., D.E. 9). The Commissioner cross-moved for judgment on

---

[1] The background is derived from the administrative record filed by the Commissioner on March 26, 2018. (R., D.E. 7.) "R." denotes the administrative record. For purposes of this Memorandum and Order, familiarity with the administrative record is presumed. The Court's discussion of the evidence is limited to the challenges and responses raised in the parties' briefs.

2

the pleadings on July 18, 2018, (Comm'r's Br., D.E. 12), and Plaintiff opposed the Commissioner's motion on August 8, 2018, (Pl.'s Opp., D.E. 14).

DISCUSSION

I.  Standard of Review

In reviewing the ruling of an ALJ, the Court does not determine de novo whether the plaintiff is entitled to disability benefits.  Thus, even if the Court may have reached a different decision, it must not substitute its own judgment for that of the ALJ.  See Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).  If the Court finds that substantial evidence exists to support the Commissioner's decision, the decision will be upheld, even if evidence to the contrary exists.  See Johnson v. Barnhart, 269 F. Supp. 2d 82, 84 (E.D.N.Y. 2003).

II. The ALJ's Decision

Initially, the ALJ found that Plaintiff meets the insured-status requirements of his claim through December 31, 2018.  (R. 10.)  Next, the ALJ applied the familiar five-step disability analysis and concluded that Plaintiff was not disabled from October 9, 2013, the alleged disability-onset date, through February 15, 2017, the date of his decision.  (R. 8-16); see 20 C.F.R. § 404.1520.  At steps one through three, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date, (R. 10); (2) Plaintiff had severe

impairments consisting of "[b]ilateral [k]nee [d]egenerative [j]oint [d]isease [s]tatus-[p]ost [a]rthroscopic [r]epairs and [r]heumatoid [a]rthritis," (R. 10); and (3) these impairments did not meet or medically equal the severity of any of the impairments listed in Appendix 1 of the Social Security regulations, (R. 11). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) that includes the ability to sit and to stand/walk six hours each in an eight-hour workday with normal breaks and lift/carry twenty pounds occasionally and ten pounds frequently. Further, [Plaintiff] can never climb ladders, ropes or scaffolds and occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl, frequently handle, finger and feel bilaterally.

(R. 11-14.) Proceeding to steps four and five, the ALJ found that while (4) Plaintiff was unable to perform his past relevant work as a police officer, (R. 14), (5) considering his RFC, age, education, and work experience, Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy, (R. 15-16). As a result, the ALJ determined that Plaintiff was not disabled. (R. 16.)

III. Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because (1) the ALJ's finding is inconsistent with, or alternatively, not supported by, the opinion

4

of Dr. Kanista Basnayake, M.D., that Plaintiff had "mild to moderate limitation for prolonged standing, walking, climbing, bending, lifting, carrying, and kneeling," (Pl.'s Br. at 9-12; see R. 13-14, 288-91), and (2) considering the severe rheumatoid arthritis affecting Plaintiff's hands and wrists, the record lacks support for the finding that he can "frequently handle, finger and feel bilaterally," (Pl.'s Br. at 12-14; see R. 11). The Commissioner contends that substantial evidence supports the RFC finding because (1) Dr. Basnayake's opinion is reflected in the RFC determination, (Comm'r's Br. at 12-14), and (2) the evidence shows that despite his rheumatoid arthritis, Plaintiff was not precluded from frequently handling, fingering, and feeling bilaterally, (Comm'r's Br. at 14-16).

First, Plaintiff's argument that the ALJ's RFC determination rejects Dr. Basnayake's opinion fails. On October 30, 2014, Dr. Basnayake consultatively examined Plaintiff on behalf of the Social Security Administration. (R. 288-91.) Plaintiff complained of rheumatoid arthritis, bilateral knee pain, and right shoulder pain. (R. 288.) He reported taking Enebrel for his rheumatoid arthritis, along with oxycodone, acetaminophen, and Flexeril. (R. 289.) Dr. Basnayake noted that Plaintiff was able to cook, clean, do his laundry, shop, dress, and shower. (R. 289.) She observed that Plaintiff was in no acute distress, had a normal gait and stance, was able to walk on his heels and

5

toes without difficulty, could squat fully, and used no assistive devices. (R. 289.) Further, Dr. Basnayake noted that he did not need help changing for the exam or getting on or off the exam table, and that he could rise from his chair without difficulty. (R. 289.) She reported that Plaintiff had a full range of motion in his shoulders, elbows, forearms, and wrists and that his hands were normal with "no sweating, no tenderness, or swelling noted on the joints." (R. 290.) She rated his grip strength as "5/5 bilaterally," found that his hand and finger dexterity were intact, and noted that he was able to "zip, button, and tie." (R. 291.) She also found that Plaintiff had a full range of motion in his hips, knees, and ankles, and that his joints were stable. (R. 290.) She noted that there was "[n]o redness, heat, swelling, or effusion" and "[n]o evident subluxations, contractures, ankylosis, or thickening." (R. 290.) Dr. Basnayake further observed that Plaintiff had full strength in his upper and lower extremities. (R. 290.) She diagnosed Plaintiff with rheumatoid arthritis causing bilateral pain in his hands, wrists, and feet; bilateral knee pain; and left shoulder pain. (R. 291.) Dr. Basnayake opined that Plaintiff "ha[d] mild to moderate limitation for prolonged standing, walking, climbing, bending, lifting, carrying, and kneeling." (R. 291.)

The ALJ afforded Dr. Basnayake's opinion "great weight" because it was "consistent with the examination, wherein

6

[Plaintiff] displayed no significant limitations in motion[,] and the nature of the reported impairments." (R. 13-14.) As discussed, Plaintiff argues that the RFC determination that he can perform light work with certain limitations is inconsistent with Dr. Basnayake's opinion, or alternatively, that Dr. Basnayake's opinion regarding "mild to moderate limitation" is too vague to constitute substantial evidence supporting the RFC determination. The Court is unpersuaded.

Dr. Basnayake's opinion supports, rather than conflicts with, the RFC finding. Courts within this Circuit have held that opinions of similar "mild to moderate limitations" support RFC findings that claimants are capable of "light work." See, e.g., Bates v. Berryhill, No. 17-CV-3311, 2018 WL 2198763, at *11 (E.D.N.Y. May 14, 2018) (finding that "mild to moderate limitation for sitting, and a moderate limitation in standing, bending, and lifting or carrying on a continuing basis" supported the ALJ's RFC determination that the claimant could perform light work); Harrington v. Colvin, No. 14-CV-6044, 2015 WL 790756, at *13-15 (W.D.N.Y. Feb. 25, 2015) (compiling cases) (holding that the ALJ's finding that claimant could sit, stand, and walk for six hours a day was consistent with the opinion that he was moderately limited in his ability to walk for prolonged periods). For instance, in Nelson v. Colvin, the undersigned found that "the ALJ's determination that [the claimant] could perform 'light work' is

7

supported by [a doctor's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis, especially using the left hand.'"[2] No. 12-CV-1810, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) (citing Lewis v. Colvin, 548 F. App'x 675, 677 (2d Cir. 2013)).

Additionally, the ALJ discussed Dr. Basnayake's opinion on Plaintiff's mild to moderate limitations in the context of her examination findings that Plaintiff also lacked many restrictions. (R. 13-14); cf. Cross v. Colvin, No. 15-CV-0878, 2016 WL 6659095, at *1-2 (W.D.N.Y. Nov. 11, 2016) (remanding case for further consideration where ALJ "did not explain how his detailed RFC finding related to the medical evidence or, more importantly, how it comported with [a doctor's] opinion of moderate limitations"). Specifically, the ALJ noted Dr. Basnayake's observations that Plaintiff had a normal gait and stance, could walk on his heels and toes without difficulty, could squat fully, displayed no musculoskeletal deficits, had a full range of motion in his "lower extremities, including the knees," had unremarkable X-rays of his right knee, had normal reflexes and normal sensation, had full

---

[2] Plaintiff attempts to distinguish Nelson by arguing that Plaintiff's limitation for prolonged standing and walking is more significant than the Nelson claimant's limitation for standing and walking generally. (Pl.'s Opp. at 2.) However, his effort to distinguish Nelson is unavailing because he fails to explain how an unqualified mild to moderate limitation for standing and walking is more severe than such a limitation for only prolonged standing and walking.

8

muscle strength in his extremities, could care for his personal needs, and was not in acute distress. (R. 13-14; see R. 288-91.)

Therefore, the Court finds that the ALJ's RFC determination that Plaintiff could perform "light" work, with limitations--as opposed to "medium," "heavy," or "very heavy" work--incorporates Dr. Basnayake's opinion, and that her examination report and opinion constitute substantial evidence supporting the RFC finding. See Gurney v. Colvin, No. 14-CV-0688, 2016 WL 805405, at *3 (W.D.N.Y. Mar. 2, 2016) ("The determination that [p]laintiff should do only light work therefore accounts for the moderate physical limitations identified by [the doctor]."); see also 20 C.F.R. § 404.1567 (classifying jobs as "sedentary," "light," "medium," "heavy," or "very heavy" based on physical exertion requirements).

Even if the ALJ's RFC finding could be viewed to conflict with Dr. Basnayake's opinion, there would be no error because the remainder of the record supports the RFC determination. In addition to Dr. Basnayake's examination findings, the ALJ thoroughly recounted Plaintiff's treatment by orthopedist Sanford Ratzan, M.D., (R. 12-13), and discussed Plaintiff's daily activities, (R. 14). While not all of Dr. Ratzan's treatment notes were positive, the ALJ highlighted that they indicated that Plaintiff had no recent treatments to his left knee and had a good range of motion in his right knee, which was progressing with

9

treatment. (R. 12-14; see, e.g., R. 300, 338 (noting that on April 20, 2015, Plaintiff's right knee was "doing quite well" with good range of motion, and that on October 6, 2016, Plaintiff's right knee had "good extension" and was "absolutely stable"); see generally R. 292-338.) Moreover, the ALJ pointed to Plaintiff's abilities to care for his personal needs, prepare meals, drive and travel independently, shop for himself, and socialize several times each week, all of which support the RFC finding. (R. 14; see R. 172-74, 289.) Thus, the ALJ's RFC determination that Plaintiff can perform light work, with limitations, is supported by substantial evidence in the record.

Second, Plaintiff's contention that "[t]he ALJ points to absolutely no evidence" to support the assessment that Plaintiff can "frequently handle, finger, and feel bilaterally" is unfounded, as the ALJ referred to treatment records and Plaintiff's reported daily activities to support the finding. (Pl.'s Br. at 12-13; R. 12-14.) The ALJ discussed records dated February 2013 through June 2014 regarding Plaintiff's treatment by Sara Johnson, M.D., of Rheumatology Associates of Long Island. (R. 13.) Critically, Dr. Johnson noted that Plaintiff's rheumatoid arthritis was "[w]ell controlled" by his arthritis medication, Enebrel, which he had been taking for nine years. (R. 220-32; see R. 13.) She also provided that while Plaintiff presented with mild trigger finger, pain in his left thumb, and "[s]ome mild

10

thenar wasting,"[3] he reported that he did not feel symptomatic enough to undergo a nerve-conduction study to determine whether he suffered from carpal tunnel syndrome.  (E.g., R. 220); see also https://www.mayoclinic.org/diseases-conditions/carpal-tunnel-syndrome/diagnosis-treatment/drc-20355608.  Further, her examinations showed that Plaintiff did not have synovitis--inflammation of the joint lining--in his wrists, elbows, or MCP (metacarpophalangeal) finger joints.  (E.g., R. 221); see https://www.arthritis-health.com/glossary/metacarpophalangeal-mcp-joints; https://www.arthritis-health.com/glossary/metacarpophalangeal-mcp-joints.

Additionally, the ALJ discussed Dr. Basnayake's report, in which she noted that Plaintiff had full range of motion in his wrists and that his hands were "normal, [with] no sweating, no tenderness, [and no] swelling noted on the joints."  (R. 13-14; see R. 290.)  Dr. Basnayake also found that Plaintiff was "[a]ble to zip, button, and tie" and had full grip strength and intact hand and finger dexterity.  (R. 290-91.)  Further, neither Dr. Basnayake nor Dr. Johnson opined that Plaintiff would be limited in his ability to manipulate objects because of his rheumatoid arthritis.

---

[3] "The thenar muscles are three short muscles located at the base of the thumb."  https://teachmeanatomy.info/upper-limb/muscles/hand/.

Finally, as discussed above, the ALJ highlighted Plaintiff's activities of daily living, which are consistent with the RFC determination. (R. 14; see R. 172-74, 289.)

Therefore, the ALJ's RFC finding that Plaintiff was able to "frequently"--as opposed to "constantly"--"handle, finger and feel bilaterally" is supported by substantial evidence, and despite Plaintiff's contention, there was no evidentiary gap for the ALJ to fill by obtaining a medical opinion to establish Plaintiff's limitations in this regard. (Pl.'s Br. at 13-14); see Gaudioso v. Comm'r of Soc. Sec., No. 17-CV-7398, 2018 WL 5268114, at *1-3 (E.D.N.Y. Oct. 23, 2018) (discussing difference between "occasional" and "frequent" ability to perform task and granting Commissioner's motion where claimant challenged the ALJ's failure to obtain a medical opinion on whether she should have been restricted to jobs requiring "occasional," rather than "frequent," motor skills); see also Johnson v. Colvin, 669 F. App'x 44, 46-47 (2d Cir. 2016) (citations omitted) ("[B]ecause the record contained sufficient [ ] evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion.'").

In sum, the ALJ's RFC determination is consistent with Dr. Basnayake's opinion and supported by substantial evidence in the record.

CONCLUSION

For the foregoing reasons, the Commissioner's motion (D.E. 11) is GRANTED and Plaintiff's motion (D.E. 8) is DENIED. The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February __26__, 2019
Central Islip, New York